UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VERONICA AVELAR,

        Plaintiff,

    v.

YOUTH AND FAMILY ENRICHMENT SERVICES, et al.,

        Defendants.
_____/

No. C 07-0814 PJH

**ORDER GRANTING SUMMARY JUDGMENT**

Defendant's motion for summary judgment came on for hearing before this court on May 7, 2008. Plaintiff Veronica Avelar ("plaintiff") appeared through her counsel, Robert S. Aaron. Defendant Youth & Family Enrichment Services dba First Chance North ("First Chance") appeared through its counsel, Dirk D. Larsen. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendant's motion as follows, and for the reasons stated at the hearing.

**BACKGROUND**

This case involves allegations of a sexual assault that purportedly occurred while plaintiff was involuntarily confined at a sobering station, after having been arrested for driving under the influence.

    A.    Background Allegations

Plaintiff alleges that on February 12, 2005, at approximately 3:01 a.m., she was arrested by the Colma Police Department for driving under the influence. See Complaint, ¶

1  9. Following the arrest, the Colma police transported plaintiff to defendant First Chance, where she was involuntarily confined. Defendant is an entity that provides and maintains a 24-hour program that serves as an alternative to jail for persons arrested for driving under the influence. See id. at ¶¶ 4, 10.

When plaintiff was dropped off at defendant's facility, she was left alone with defendant Floyd Burrell ("Burrell"), an employee of defendant's who was the only one in charge of the facility on the evening of February 12. See id. at ¶ 5. Defendant Burrell did an initial screening of plaintiff. During the screening, Burrell asked plaintiff multiple questions about her private and medical history, including whether she had a boyfriend. Burrell then admitted plaintiff, and took her to a room that was used to house female arrestees. Plaintiff was the only individual in the room. Id. at. ¶ 12.

According to plaintiff's allegations, after plaintiff had been in the room for a period of time, defendant Burrell entered the room and began conversing with her. Burrell asked plaintiff whether she had ever cheated on her boyfriend. He also asked whether she had ever had sex with a black man. Plaintiff alleges that she responded by continually asking to be released. Defendant Burrell then asked plaintiff if she would give him a "blow job," and exposed himself to plaintiff. Subsequent to that, plaintiff alleges that defendant Burrell moved behind her, pushed her against the wall, and attempted to rape and/or sodomize her. Hoping to avoid being raped or sodomized, plaintiff alleges that she "encouraged Burrell to orally copulate her which he did." See generally id. at ¶ 13.

Plaintiff alleges that she was released early the following morning and that after her release, defendant Burrell made repeated telephone calls to her, which plaintiff refused to answer or return. See Complaint, ¶ 15.

B.   The Instant Action

As a result of the above, plaintiff instituted the present action against defendants Burrell and First Chance, alleging: (1) violation of 42 U.S.C. § 1983; (2) violation of the Ralph Act under Cal. Civil Code § 51.7; (3) violation of the Unruh Civil Rights Act; (4)

2

sexual battery; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; and (7) negligence. See generally Complaint. The first cause of action is a federal claim; the others are state common law and statutory claims. Plaintiff asserts the first claim against defendant Burrell only; all other claims are asserted against both defendants.

Defendant First Chance now moves for summary judgment on two grounds. First, it moves for summary judgment on plaintiff's second through sixth causes of action, on grounds that First Chance cannot be held vicariously liable for the alleged sexual assault of plaintiff by its employee. Second, it moves for summary judgment on grounds that it is entitled to judgment as a matter of law on plaintiff's seventh cause of action, for negligent hiring, retention and supervision of defendant Burrell.[1]

**DISCUSSION**

A.   Legal Standards

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

---

[1]   First Chance has also filed objections to evidence with respect to (1) plaintiff's references to defendant's subsequent remedial measures regarding supervision policies at First Chance; and (2) plaintiff's references to defendant's insurance liability against sexual assaults of its employees. The court hereby SUSTAINS both objections, based on Federal Rules of Evidence 407 and 411.

3

B.      Vicarious Liability

The issue of defendant's vicarious liability is at the heart of this motion. Under California's doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by an employee within the scope of employment. See Perez v. Van Groningen & Sons, Inc., 41 Cal.3d 962, 967 (1986). The doctrine of respondeat superior only applies, however, if the plaintiff is able to prove that the employee's tortious conduct was committed within the scope of employment. The general rule is that where an employee commits acts of sexual misconduct during the course of his work, such acts are outside the scope of his employment, and no vicarious liability attaches. See, e.g., Maria D. v. Westec Residential Sec., Inc., 85 Cal. App. 4th 125, 146-47 (2000); Lisa M. v. Henry Mayo Newhall Mem'l Hosp., 12 Cal. 4th 291, 301 (1995); Farmers Ins. Group v. County of Santa Clara, 11 Cal.4th 992, 1006-07 (1995). To that end, First Chance seeks summary judgment on grounds that defendant Burrell's alleged sexual assault cannot, as a matter of law, be considered an action within the scope of Burrell's employment, such that vicarious liability extends to First Chance.

Plaintiff, by contrast, relies on an exception to the general rule against employer liability for an employee's sexual misconduct. Specifically, plaintiff relies on the California Supreme Court's ruling in Mary M. v. City of Los Angeles, in which the state supreme court decided that vicarious liability *can* extend to employers of on-duty police officers who commit sexual assaults. See 54 Cal. 3d 202 (1991).

Preliminarily, an overview of Mary M. is essential, as the parties agree that the court's holding there – and subsequent interpretations of that holding – provides the roadmap for the court's ruling here. In Mary M., the state supreme court considered whether the City of Los Angeles could be held vicariously liable for the actions of a police officer who raped a woman whom he pulled over while on duty. See 54 Cal. 3d 202. In deciding whether the police officer was acting within the scope of his employment – and therefore, whether vicarious liability applied – the supreme court stated that the "test" for

4

determining whether an employee is acting outside the scope of employment is whether "in the context of the particular enterprise, an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." See id. at 214.

In making this determination, the Mary M. court referenced three underlying policy interests which must be satisfied in order to justify the imposition of vicarious liability. It found that vicarious liability is appropriate in order to (1) prevent recurrence of the tortious conduct; (2) give greater assurance of compensation for the victim; and (3) ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury. See Mary M., 54 Cal. 3d at 209. The court found that these three policy considerations justified imposition of vicarious liability in the case before it, because (1) the imposition of liability on public entities whose law enforcement officers commit sexual assaults while on duty would encourage employers to take preventive measures, without significantly interfering with the ability of police departments to enforce the law and protect society; (2) vicarious liability is appropriate in compensating the victims of police misconduct, as evidenced by the state legislature's passage of laws prohibiting police officers from committing police brutality; and (3) the cost of the victim's loss should properly be borne by the City and the public, since the community derives substantial benefits from the lawful exercise of police power. See id. at 214-17.

The Mary M. court then went on to conclude that the police officer at issue was, in fact, acting within the scope of his employment. The court noted first that the proper inquiry was whether the risk of the employee's misconduct "was one that may fairly be regarded as typical of or broadly incidental to the enterprise undertaken by the employer." See id. at 217. And it further observed: "in view of the considerable power and authority that police officers possess, it is neither startling nor unexpected that on occasion an officer will misuse that authority by engaging in assaultive conduct.... Sexual assaults by police officers are fortunately uncommon; nevertheless, the risk of such tortious conduct is

5

1  broadly incidental to the enterprise of law enforcement, and thus liability for such acts may
2  appropriately be imposed on the employing public entity." Id. at 217-18.  Then, rejecting
3  the City's argument that the police officer was pursuing his own interests rather than acting
4  in the course of his employment, the court noted that the employee police officer had
5  committed a wrongful act "in the course of a series of acts... which were authorized by the
6  principal." Id. at 219 (In "[v]iewing the transaction as a whole, it cannot be said that, as a
7  matter of law, [the employee officer] was acting outside the scope of his employment when
8  he raped plaintiff").  In sum, vicarious liability applied to the City defendant, concluded the
9  court.
10       The parties agree that the fundamental question before the court here is whether the
11 Mary M. exception to the rule of non-employer liability for sexual assaults applies to the
12 facts here, such that First Chance can be held liable for defendant Burrell's actions.
13 Plaintiff asserts that Mary M. compels the imposition of vicarious liability here, since the
14 underlying policy reasons that justified imposition of vicarious liability in the police officer
15 context also apply here.  Defendant objects, however, arguing that Mary M. limited its
16 holding to the on-duty police officer context only, as subsequent decisions have
17 recognized.  Ultimately, while this issue is a difficult one, the court is persuaded that
18 defendants have the better argument, and there is no basis for extending the Mary M.
19 holding to the case at bar.
20       First, there is nothing in Mary M. that suggests that the California Supreme Court
21 would find that vicarious liability should be applied outside the police officer context, to a
22 third party non-profit "sobering station," based on a *counselor*'s sexual assault.  Indeed,
23 Mary M. expressly distinguishes between situations involving police officers, and situations
24 involving other contexts in which the employees are cloaked with authority similar to police
25 officers.  For example, the Mary M. court noted that cases that involve sexual assaults by
26 private security guards are "distinguishable."  See 54 Cal. 3d at 219.  According to the
27 court, because "such persons do not act as official representatives of the state,""any
28

6

authority they have is different from, and far less than, that conferred upon an officer of the law." Id. In other words, the court took into account the actual authority that police officers possess, reasoning that it was this authority that justified in part the imposition of vicarious liability where the factual circumstances make it appropriate. Where such actual authority does not exist, it stands to reason that no vicarious liability results.

This is precisely the case here. While plaintiff may have *believed* that defendant Burrell was a police officer, that First Chance's premises were equivalent to a jail, and that she was in custody, this has no impact on the actual authority vested in Burrell – which consisted of no official authority at all. Specifically, Burrell was a counselor, not a police officer, did not wear a uniform or badge, and did not possess a gun. Nor was Burrell authorized by law or by his employer to use force of any kind against "inmates." Moreover, the facility was not a locked facility like a jail, and plaintiff was free to leave at anytime, even though she did not know that. Accordingly, under Mary M., the situation at bar is distinguishable.

Second, not only is Mary M. distinguishable, but defendant is furthermore correct that Mary M. expressly *limited* its reasoning to those situations dealing with actual on-duty police officers, based on the unique position of authority duly vested in police officers by the state. See Mary M., 54 Cal. 3d at 218 fn.11 ("We stress that our conclusion in this case flows from the unique authority vested in police officers. Employees who do not have this authority and who commit sexual assaults may be acting outside the scope of their employment *as a matter of law*.")(emphasis added); id. at 221 ("we hold that when, as in this case, a police officer on duty misuses his official authority by raping a woman whom he has detained, the public entity that employs him can be held vicariously liable"). As defendant's counsel emphasized at the hearing, the authority to use force is fundamental to police officers' duties. And it is precisely because police officers are authorized to physically detain and touch others without consent that makes their sexual misconduct foreseeable, justifying at least in part, employer liability.

7

Finally, the court finds defendant's reliance on later cases including <u>Maria D. v. Westec Residential Security</u>, instructive.[2]  In <u>Maria D</u>., the California appellate court affirmed the lower court's grant of summary judgment to defendant, where plaintiff alleged that defendant was vicariously liable for the sexual assault of its on-duty security guard.  <u>See</u> 85 Cal. App. 4th 125, 148 (2000).  The plaintiff in <u>Maria D</u>. made similar arguments to those made by plaintiff here, including that the <u>Mary M</u>. reasoning should be extended to cover defendant's security guards, based on the fact that those security guards "project the authority of police officers; patrol communities in marked vehicles, wearing uniforms and carrying firearms; and are authorized by their employer to make a private persons arrest and to use deadly force in certain circumstances...".  <u>See id</u>. at 148.  The <u>Maria D</u>. court, however, held that notwithstanding these marks of ostensible authority, "a significant difference between the police officer in <u>Mary M</u>. and the security guard here remains."  The difference:  "[t]he security guard's actual authority is not comparable to that of a police officer."  <u>Id</u>.

Again, so here.  While plaintiff has done her best to urge the court to analogize defendant Burrell to a police officer vested with actual authority, and to analogize defendant First Chance to a municipal employer housing an actual jail, the analogy does not pass muster, for the reasons stated above.  No analogy can supplant the actual authority required to justify treatment as a police officer.  Moreover, if neither <u>Mary M</u>. nor <u>Maria D</u>. were willing to extend the <u>Mary M</u>. exception to security guards – whose marks of ostensible authority (e.g., uniforms, firearms, ability to make arrests) are arguably much

---

[2]  The court also finds other subsequent cases to be instructive in holding that vicarious liability does not extend to employers for the actions of employees who possess no actual authority equal to that of police officers' – despite the fact they are vested with other types of apparent authority.  <u>See, e.g., Lisa M.</u>, 12 Cal. 4th 291 (no vicarious liability for ultra sound technician's sexual assault of patient); <u>Farmers Ins. Group</u>, 11 Cal. 4th 992 (no vicarious liability for deputy sheriff's sexual harassment of a trainee as supervisory authority over the trainee was not comparable to extraordinary authority of law enforcement officers over the public); <u>John R. v. Oakland Unified Sch. Dist.</u>, 48 Cal. 3d 438 (1989)(no vicarious liability for teacher's molestation of a student as authority of police with uniforms, badges and guns far surpasses the authority of teachers over students).

8

1   greater than defendant Burrell's – then the court will not contravene this precedent.

2        In sum, the court is not persuaded that the Mary M. exception applies to the facts
3   here such that vicarious liability should extend to First Chance. Accordingly, the court
4   GRANTS summary judgment in defendant's favor as to plaintiff's second through sixth
5   causes of action.

6        C.     Negligence

7        Defendant also seeks summary judgment with respect to plaintiff's seventh cause of
8   action – i.e., plaintiff's claim that defendant First Chance was "negligent in its hiring,
9   screening, training monitoring, supervising, disciplining, and or otherwise managing
10  Burrell." See FAC, ¶ 45.[3] In order to succeed on a negligent hiring and supervision claim,
11  a plaintiff must demonstrate that a defendant's "acts or omissions [allegedly committed by
12  defendant itself], in the context of hiring, training or retaining [] an employee, breached a
13  duty of care which it owed directly to plaintiff." See, e.g., Flores v. Autozone West, Inc., 74
14  Cal. Rptr. 3d 178, 187 (2008). Liability for negligent hiring and supervision is based upon
15  the reasoning that if an enterprise hires individuals with characteristics that might pose a
16  danger to customers or other employees, the enterprise should bear the loss caused by the
17  wrongdoing of its incompetent or unfit employees. Thus, a critical element in stating a
18  claim for negligent hiring and supervision is the defendant's knowledge of characteristics
19  that might pose a danger to employees, customers, or the public. See, e.g., Federico v.
20  Superior Court (Jenry G.), 59 Cal. App. 4th 1207, 1216 (1997).

21       Construing plaintiff's arguments as liberally as possible, plaintiff contends that First

---

[3] The operative complaint alleges only a claim for negligent hiring, training, and supervision. See Complaint, ¶ 45. This is contrary to plaintiff's opposition brief, which states for the first time that defendant First Chance had a "duty to enact an effective mechanism for the protection of its highly vulnerable female detainees," "had a duty to effectively communicate key incidents between outgoing and incoming management;" and "had a duty to provide onsite supervision of its staff working alone on graveyard shift" – all of which plaintiff asserts First Chance violated. Nonetheless, plaintiff is bound by the allegations and claims of her complaint, and may not allege additional duties or negligence grounds for the first time on summary judgment.

9

1  Chance negligently hired and trained defendant Burrell, and that it negligently supervised
2  Burrell by failing to provide supervision on his graveyard shift, and by leaving him alone on
3  a graveyard shift.  To begin with, however, plaintiff has come forward with no evidence
4  establishing that First Chance knew that defendant Burrell was incompetent or unfit to
5  perform his role as counselor for women detainees, or more specifically, that Burrell had a
6  propensity to commit sexual assaults.  While plaintiff has introduced evidence that *another*
7  counselor was allegedly involved in a sexual assault against a female client in 2001, and
8  the fact that Burrell was aware that detainees would occasionally come-on sexually to First
9  Chance staff, this falls far short of suggesting, let alone proving, that defendant Burrell had
10 a propensity to assault women.  See Aaron Decl., Ex. B at 82-84; Ex. C at 17-20.  Since the
11 relevant inquiry here is whether First Chance knew that Burrell was a person who could not
12 be trusted, within the context at issue – i.e., whether First Chance knew or should have
13 known that Burrell's sexual misconduct was foreseeable – plaintiff's failure to introduce any
14 evidence suggesting Burrell's propensity to commit sexual assaults, is fatal to plaintiff's
15 negligent hiring and supervision claim.  See Federico, 59 Cal. App. 4th at 1216 ("an
16 employer's liability must be determined in the context of the specific duties the work
17 entails").

18  Furthermore, defendant *has* introduced evidence that defendant Burrell received
19 regular training, was aware of First Chance's prohibition of indecent conduct and sexual
20 harassment, and furthermore signed and acknowledged receipt of First Chance's code of
21 conduct, which expressly forbids sexual harassment and indecent conduct.  See, e.g.,
22 Doherty Decl., ¶ 6; Larsen Decl., Ex. 2 at 46-47; 102.

23  In sum, therefore, there are no material facts that have been introduced which
24 suggest that defendant First Chance's acts or omissions in the training, hiring, or
25 supervision, etc. of defendant Burrell, breached any duty of care to plaintiff.  Summary
26 judgment is therefore GRANTED in defendant's favor on the seventh cause of action.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: June 23, 2008

PHYLLIS J. HAMILTON
United States District Judge